UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN


SANDRA DALE,

          Plaintiff,                    Case No.


vs.


DENIS R. MCDONOUGH, UNITED STATES
SECRETARY OF VETERAN AFFAIRS

          Defendant.

_____/
Rodney Williams (P47888)
Attorney for Plaintiff
615 Griswold Street; Suite 700
Detroit, Michigan 48226
(313) 309-7852
(313) 309-7853
attorneyrodneywilliams@gmail.com
_____/

<u>COMPLAINT and JURY DEMAND</u>

      Plaintiff Sandra Dale ("Plaintiff"), by and through her attorney, Rodney

Williams, in complaining of Defendant Denis R. McDonough, United States

Secretary of Veteran Affairs ( "Defendant"), states as follows:

## JURISDICTION AND VENUE

1.     Plaintiff brings this action federal law under the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. ("Rehab Act") for Defendant's discriminating against her on the basis of her disability by failing to provide her with reasonable disability accommodations, retaliating, and creating a hostile work environment because of such request after she filed two (2) EEO complaints in this matter.

2.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, 1343, and 1345.

3.     Venue for this action is proper in the United States District Court for the Eastern District of Michigan, under 28 U.S.C. § 1391(b)(1)-(2) and (d) because the employment practices hereafter alleged to be unlawful were committed in the Eastern District of Michigan and because Defendant's contacts are sufficient to subject it to personal jurisdiction in that district.

4.     Plaintiff exhausted the administrative remedies necessary to assert the claims contained in this Complaint by filing EEO Charge Nos. 470-2019-00411X (Agency No. 200J-0655-2019101439) and 471-2019-0042X (Agency No. 200J-0655-2018104106). Thereafter, Plaintiff received the consolidated final agency decision regarding said EEO charges. (See "Exhibit A"). Plaintiff timely initiated this lawsuit within 90 days of her receipt of the final agency decision.

## PARTIES

5.     Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

6.     Plaintiff is, and throughout the events described in this Complaint was, a federal government employee at the  Aleda Lutz Veterans Affairs Medical Center (VAMC) in Saginaw, Michigan  as a Records Information Manager, GS-9.

7.     At all times relevant, the U.S. Department of Veteran Affairs has been and is a Federal Agency of the United States. Denis R. McDonough is the current Secretary of Veteran Affairs.

8.     At all times relevant to the allegations herein, Defendant was an "employer" of Plaintiff, and Plaintiff was an "employee" of Defendant, as those terms are defined under the Rehab Act.

## COMMON ALLEGATIONS

9.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that:

> No otherwise qualified individual with a disability in the United
> States, as defined in section 705(20) of this title, shall, solely by
> reason of her or his disability, be excluded from the participation
> in, be denied the benefits of, or be subjected to discrimination
> under any program or activity receiving Federal financial
> assistance or under any program or activity conducted by any
> Executive agency or by the United States Postal Service.

10.     Plaintiff is an individual with a disability under the Rehabilitation Act.

Plaintiff suffers from asthma, bronchitis, shellfish allergy, anemia, seasonal

allergies, and allergy to formaldehyde. Her  symptoms are exacerbated by working

in close proximity to others who eat or cook shellfish, smoke at her worksite, and

areas containing any trace of formaldehyde and exposure which can substantially

limit at least one of Plaintiff's major life activities.

11.     Plaintiff at all relevant times is fully qualified as a Records Information

Manager, GS-9 and can perform all the essential functions of the position with or

without accommodations.

12.     On April 9, 2018, Plaintiff suffered a severe allergic reaction to shellfish that

was brought into the Plaintiff's work environment.

13.      In the midst of all of this, her immediate supervisor, Ms. Claretta White,

Assistant Chief of Health Information Management Service (HIMS) instead of

addressing the allergic reaction that was causing the Plaintiff's face to swell up,

she decided to argue with the Plaintiff on whether shellfish should bother if she did

not ingest it or was in her face. The Plaintiff fearful of her health due to the

inaction of her supervisor was forced to drive herself to the facility urgent care for

immediate treatment. At that particular time, the Plaintiff's worksite was 2.7 miles

from the main hospital.

14.     That the provider Dr. Llanos at the facility urgent care department treated Plaintiff and advised she request reasonable accommodations. After the treatment, her medical provider recommended Plaintiff recover at home.

15.     The EEO Manager, Cheryl Biggins, where Plaintiff was directed to file for reasonable accommodations, informed her that she could not receive accommodations for allergies but could instead recommend a purifier.

16.     A facility Fact-Finding substantiated that Plaintiff supervisor, Ms. White and her co-workers were aware of her allergy towards smoke and shellfish.

17.     That upon Plaintiff's return to work the following day she was threatened with discipline for following her medical provider recommendation.

18.     Matters got worse soon thereafter:

        a.      Even though Plaintiff allergy reaction occurred at work, Ms. White forced the Plaintiff to take four (4) days of sick leave. This was substantiated by a facility Fact-Finding. After Plaintiff complained, Ms. White was required to corrected Plaintiff leave.

        b.      Also substantiated by the facility Fact -Finding was that Ms. White did not post any notice instructing employees to be considerate of other employees' allergies even though she was required to do so by

Ms. Biggins. Furthermore Ms. White informed Plaintiff that employees have the right to bring in any food they wanted.

c.    After Plaintiff complained about Ms. White's conduct, she was forced to perform her job and that of a co-worker's from April 16, 2018, thru April 23, 2018, in an effort to harass and intimidate her.

d.    That Plaintiff requested Ms. White assist her in completing either CA-1 (Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation) or CA-2 (Notice of Occupational Disease and Claim for Compensation) related to Plaintiff's allergic reaction however, Ms. White refused. That after Plaintiff contacted the EEO Manager again, on or about May 7, 2018, Ms. White finally agreed to fill out forms related to Plaintiff's allergic reaction . However, Ms. White did not want to be listed as a witness even though she was present and talked to Plaintiff.

e.    That on that same day (May 7, 2018),  almost 30 days after the incident, Ms. White reluctantly sent an email to all employees to be mindful of employee allergies and placed a post in the break room. However, she informed Plaintiff "if you have those kinds of allergies, you should retire or find somewhere else to work."

f.   Although Plaintiff was in discussion with Ms. White regarding her

current position as a GS-9 to be promoted to the target GS-11, after

Plaintiff complained about the inaction of Ms. White, it was

substantiated by a facility Fact-Finding that Ms. White notified

Plaintiff that she was rescheduling her records management training

course. Ms. White also made it clear to the Plaintiff that she would

never receive the upgrade.

g.   That even as a GS-9, Plaintiff was and still is today being incorrectly

paid but Ms. White never took any action to correct.

h.   That prior to complaining about Ms. White's failure to accommodate

her, Plaintiff was rated as "Exceptional" on performance appraisals.

However after Plaintiff's complaints, her new ratings were reduced to

only "Fully Successful" without any explanation.

i.   That because Plaintiff who is also a veteran and receiving medical at

the VA hospital, Ms. White and others would illegally review her

medical records without her consent.

19.   Defendant failed to acknowledge the Plaintiff's reasonable

accommodations request for her medical conditions. Instead, the Ms. White

encouraged the Plaintiff to retire. Conversely, the Defendant needed to provide an

allergy-friendly work environment rather than allowing food to be eaten or cooked in the workplace that could have an adverse effect on any employee.

20.     Due to Ms. White treatment towards Plaintiff, she filed a EEO complaint on June 15, 2018, based on harassment, hostile work environment, and disability discrimination.

21.     On or about July 5, 2018, well after Ms. White reluctantly sent out an email and poster regarding allergic reactions, shellfish was still brought into Plaintiff's work area without any warning. Due to Ms. White's complacency, Plaintiff  would experience coughing, welts on her face and tingling in her lips.

22.     The Defendant conducted a review and on August 25, 2018, on Plaintiff's EEO complaint and attempted to dismiss the majority of her claims. However, on appeal the EEOC Office of Field Operations (OFO) reversed the Defendant's decision and reinstated all claims which is a basis to this lawsuit.

23.     That subsequently, Plaintiff and her co-workers were relocated back on campus of the hospital. As a result, Plaintiff was advised that she would be moving to Trailers that contained formaldehyde.

24.     On October 29, 2018, Plaintiff submitted a reasonable accommodations request for her allergic reaction to formaldehyde (disability) that the facility was already aware of. She submitted the paperwork to her supervisor, Ms. Claretta White, and Ms. Minnie Beulah, facility Local Reasonable Accommodations

Coordinator. Plaintiff's physician listed the nature of her disability as allergic reactions, lower lung/sinus reactions to formaldehyde.

25.    Formaldehyde has recognized properties as an airway irritant and has been reported by some authors as a cause of occupational asthma. In addition, formaldehyde has been associated with cancer of the entire respiratory system. For these reasons, therefore knowing Plaintiff's medical condition for  preexisting pulmonary disease, in an effort to minimize her exposure to the same was critical.

26.    In addition, generalized airway hypersensitivity can result from exposures to a single sensitizing agent and have short- or long-term effects due to

 that exposure.

27.    Smoking is known to decrease mucociliary clearance of materials deposited during respiration in the nose and upper airways. This may increase the Plaintiff exposure to inhaled materials such as formaldehyde vapor. In addition, smoking is a potential confounding factor in the investigation of any chronic respiratory disease, including cancer. For these reasons, Plaintiff allergic reaction to formaldehyde makes it critical to eliminate her exposure to cigarette smoke as well. Although smoking is not permitted on VA property, Plaintiff co-workers and others still did so.

28.     However, her initial request for reasonable accommodations was denied by Ms. White or the former EEO Program Manager/ EEO Specialist of not being exposed to formaldehyde. It is also unclear if this was ever approval from the Office of General Counsel which if not be in violation of facility requirements.

29.     As a result of the Defendant's failure to approve Plaintiff reasonable accommodation request, Plaintiff filed another formal EEO complaint on or about November 19, 2019. The complaint alleged that the Defendant subjected Ms. Dale to discrimination on the bases of disability (environmental allergies - formaldehyde) and reprisal for prior protected EEO activity when, during a meeting on October 8, 2019, management informed her that it was changing her duty location to a  trailer (which contained formaldehyde) and violated her reasonable accommodation request. Plaintiff stated that she already requested accommodations when the Defendant sought to change her work location.

30.     Soon thereafter, the Defendant attempted to dismiss several issues within Plaintiff new EEO complaint. However on appeal the EEOC Office of Field Operations (OFO) denied the Defendant's request and slightly rephrased Plaintiff claim to more accurately reflect that management threatened to relocate Complainant to one of the trailers. Thereby denying Defendant's request for reconsideration. The Commission found that Defendant's argument addresses the

merits of Complainant's complaint rather than whether it states a viable claim of discrimination.

31.    Incredibly, at a meeting that was originally scheduled to discuss Ms. Dale job responsibilities and not her reasonable accommodation request, Ms. White threatened the Plaintiff to withdraw her original reasonable accommodation request and resubmit a new request or that she would be transferred to Trailer 36 or 38, known to have traces of formaldehyde. Although intimidated by Ms. White's threat, Plaintiff refused since her physician had already submitted the required documents.

32.    When  Ms. White scheduled that meeting under false pretenses to force Plaintiff to re-do her Reasonable Accommodation, she was aware that Plaintiff had the previous pending EEOC complaints. In fact,  she provided an affidavit and knew Ms. Dale's reasonable accommodation request was not fulfilled. The only effort made by the Defendant was to provide an air purifier to avoid the shellfish and other allergens that other people may bring in.

33.    Eventually the Plaintiff was moved to the basement of the main hospital where Ms. White originally told her that it was swing space and not available. Currently, there are sixteen people in the room where Plaintiff works in a cubicle and four offices containing additional people. Plaintiff express concern that the

reasonable accommodation air purifier is too small for a room of that size. She even today continue to have itching eyes and scalp and get sick due to the lunch items of others. In fact, the Environmental Protection Agency (EPA) warns that the functionality of air purifiers is limited as allergens that are embedded into furniture or flooring are also not captured by purifiers. As a result, Plaintiff continues to have headaches and allergic reactions causing visits to her health care provider.

34.    It should be reiterated that no point even today has Plaintiff ever withdrew her Reasonable Accommodation request.

## FIRST CLAIM FOR RELIEF – 42 U.S.C. § 12112, 29 U.S.C. § 791 ET SEQ. DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE

35.    Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in all the previous numbered paragraphs as if fully restated herein.

36.     Defendant violated the Americans with Disabilities Act and Rehabilitation Act of 1973, 42 U.S.C. § 12112 and 29 U.S.C. § 791, et seq., in failing to accommodate Plaintiff.

37.     At the time of the events described in this Complaint, Plaintiff suffered, and continues to suffer, from physical and mental conditions that, absent proper accommodations that may impair and substantially limit numerous "major life activities as that term is defined by 42 USC § 2102(2) including, but not limited to

working, sleeping, and interacting with others. She, therefore suffered from a disability as defined by 42 USC § 12102(1).

38.    Plaintiff is a qualified individual with a disability that term is defined by 42 USC § 12102(1).

39.    Plaintiff possessed the appropriate educational background, employment experience, skills, and other requirements of the position of employment with Defendant.

40.    Plaintiff can perform the essential functions of her position with or without accommodations.

41.    The Rehab Act makes it unlawful for a federal employer to discriminate against  an employee on the basis of his or her disability, because of a record of a disability, or because the employer regards the employee as suffering from a disability and requires federal employers to provide reasonable disability accommodations to employees who request them.

42.    Plaintiff was subjected to the following adverse employment action:

    a.    Issuing Plaintiff a Memo of Instruction used for disciplinary action for appropriately performing her work duties,

    b.    Subjecting Plaintiff to heightened scrutiny at work, and wrongful lowered performance reviews, as a pretext for discipline and retaliation,

    c.      Denying Plaintiff timely and appropriate reasonable accommodations without explanation,

    d.      Requiring Plaintiff to work without a current and/or correct Performance Appraisal, and

    e.      Denial of Plaintiff's position pay upgrade.

    f.      Failing to allow Plaintiff to perform duties of her position.

43.    Plaintiff was discriminated against in a way prohibited by the act when Defendant violated the Rehabilitation Act of 1973, 42 U.S.C. § 12112 and 29 U.S.C. § 791, et seq., in failing to accommodate Plaintiff in one or more of the following ways:

    a.      Harassing Plaintiff because of her disability through heightened scrutiny of her job performance,

    b.      Denial of her reasonable accommodation of her disability that she requested,

    c.      Refused to engage in the mandated interactive process that Plaintiff requested after she requested reasonable accommodations to her supervisor, Ms. White and Ms. Beulah, the local reasonable accommodation coordinator, in violation of the Act,

    d.      Refusal to engage in the interactive process in good faith,

e.   Retaliated against Plaintiff by imposing additional threats in response to her demands to engage in the interactive process.

f.   Making Ms. Dale's position so unbearable that no reasonable person could tolerate it, forcing her to consider retirement.

44.   Defendant's actions caused Plaintiff medical expenses, wage loss, and other harms, and more drastically betrayal, stress, anxiety, shame, humiliation, degradation, sleeplessness, disruption to her normal routines and exacerbation of her physical and mental impairments. Compensation for each of these harms should be determined by a jury at trial.

45.   Plaintiff is entitled to reasonable attorney fees and costs under 42 U.S.C. § 12205 and 29 U.S.C. § 794a.

## SECOND CLAIM FOR RELIEF – 42 U.S.C. § 12112, 29 U.S.C. § 791 ET SEQ. DISABILITY DISCRIMINATION – HOSTILE WORK ENVIRONMENT

46.   Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in all the previous numbered paragraphs as if fully restated herein.

47.   Defendant violated the Americans with Disabilities Act and Rehabilitation Act of 1973, 42 U.S.C. § 12112 and 29 U.S.C. § 791, et seq., in creating a hostile work environment through discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the Plaintiff 's employee's employment and create an abusive working environment.

48.    By its conduct as alleged herein, Defendant also encouraged her co-workers to exhibited hostility towards Plaintiff for requesting/needing disability accommodations and filing EEO charges against Defendant.

49.    Plaintiff has opposed Defendant's continued and ongoing violation of the Act by:

a.    Repeatedly requesting that the Defendant conforms its conduct to the law by engaging her in the mandated interactive process, and provide disability accommodations,

b.    Complaining to the EEOC about the Defendant's ongoing disability discrimination, failure to provide accommodations, and failure to engage in the interactive process, and

c.    Threatening or allowing the Plaintiff to be verbally and physically threatened and harassed by Defendant's employees without any repercussions.

d.    Failing to allow Plaintiff to perform duties of her position.

50.    In doing so, Plaintiff opposed a violation of the Act:  Defendant's continued discrimination against her, failure to accommodate, and creating a hostile work environment for her opposing same. She sought to exercise her rights under the Act:  Defendant's obligation to engage in an interactive process with her to accommodate her disability.

51.     Defendant created and/or condoned a hostile work environment against

Plaintiff by:

a.      Hyper scrutinizing Plaintiff's job performance,

b.      Disciplining Plaintiff based on the hyper security,

c.      Requiring Plaintiff to take on job responsibilities assigned to another

        employee without any justification,

d.      That on June 20, 2019, during a counseling session Ms. White pointed

        a knife which Plaintiff perceived as threatening stating that "You like

        poking the bear, poking the lion, and throwing me under the bus".

        Afterwards, Ms. White started cutting an apple with the knife while

        she continued to talk cutting the apple in wedges, and then in four (4)

        smaller pieces. While cutting, Ms. White mentioned that she knew the

        Plaintiff wouldn't go back to EEO or the union because they can't

        help her. This was a direct threat to do physical violence if Plaintiff

        continued to complain about reasonable accommodations.

e.      Threatening the Plaintiff with relocation to locations within the

        facility that has exposure to traces of formaldehyde if she did not

        withdraw her original reasonable accommodation request knowing it

        would cause her to become ill or have an allergic reaction.

      f.      Condoning employees who work in close proximity to Plaintiff to smoke and eat or warm-up shellfish at her worksite knowing it would cause her to become ill or have an allergic reaction.

52.     But for the Plaintiff's request for accommodations and EEO activity, Defendant would not have taken the actions against her described herein.

53.     Defendant's actions caused Plaintiff medical expenses, wage loss, and other harms, and more drastically betrayal, stress, anxiety, shame, humiliation, degradation, sleeplessness, disruption to his normal routines and exacerbation of his physical and mental impairments. Compensation for each of these harms should be determined by a jury at trial.

54.     Plaintiff is entitled to reasonable attorney fees and costs under 42 U.S.C. § 12205 and 29 U.S.C. § 794a..

55.     Plaintiff demands to exercise her right to a jury trial of this matter.

<u>THIRD CLAIM FOR RELIEF – 42 U.S.C. § 12112, 29 U.S.C. § 791 ET SEQ.<br>DISABILITY DISCRIMINATION – RETALIATION</u>

56.     Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

57.     The Rehabilitation Act of 1973 makes it unlawful for an employer to retaliate against an employee for exercising his or her protected rights under the Rehab Act, such as requesting disability accommodations or filing EEO charges alleging disability discrimination and/or failure to accommodate.

58.     By its conduct as alleged herein, Defendant retaliated against Plaintiff for requesting/needing disability accommodations and for filing an EEO charge against Defendant when it subjected her to a hostile work environment.

59.     In so doing, Plaintiff opposed a violation of the Act:  Defendant's continued discrimination against her, failure to accommodate, and retaliation for her opposing the same. And, she sought to exercise her rights under the Act: Defendant failed in its obligation to engage in an interactive process with her to accommodate her disability in following ways:

   a.     Subjected Plaintiff to heightened scrutiny at work, and wrongful lowered performance reviews, as a pretext for discipline and retaliation.

   b.     Denied Plaintiff timely reasonable accommodations request without explanation.

   c.     Refused to engage Plaintiff in the legally mandated interactive process to accommodate her disability;

   d.     Refused to reasonable accommodations forcing Plaintiff to work in fear of being exposed to and Ms. White has taken away all of the Plaintiff's "Exceptional" marks in her 2019 and 2020 Performance Appraisal

e.  Issued the Plaintiff a Memo of Instruction also used for disciplinary action for performing her work duties.

f.  Forcing the Plaintiff to work without a correct Performance Plan.

g.  Administered adverse decision concerning Plaintiff pay, benefits, and education or training, which negatively impacted Plaintiff ability to receive a promotion and better performance evaluation.

h.  Failing to allow Plaintiff to perform duties of her position.

60.  But for the Plaintiff's request for accommodations and EEO activity, Defendant would not have taken the actions against her described herein.

61.   As a result of Defendant's actions, Plaintiff has suffered considerable emotional distress and economic damages.

62.  Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's rights.

63.  Defendant's actions caused Plaintiff medical expenses, wage loss, and other harms, and more drastically betrayal, stress, anxiety, shame, humiliation, degradation, sleeplessness, disruption to his normal routines and exacerbation of his physical and mental impairments. Compensation for each of these harms should be determined by a jury at trial.

64.  Plaintiff is entitled to reasonable attorney fees and costs under 42 U.S.C. § 12205 and 29 U.S.C. § 794a..

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief from this Honorable Court:

1.  An ORDER enjoining Defendant from further acts of discrimination and retaliation against the Plaintiff,

2.  Such other COMPENSATORY damages as may be appropriate to compensate Plaintiff for her emotional pain and distress from Defendant's wrongful violation of her rights as delineated herein,

3.  EXEMPARY damages, in whatever amount the Court should deem appropriate, pursuant in Michigan law,

4.  PUNITIVE damages, whatever the Court should deem appropriate, pursuant to 42 USC § 1981a(b)(3),

5.  An AWARD of Attorney's fee, in an amount determined reasonable by the Court, so wrongfully incurred in bringing this action, pursuant to the various statutes identified herein,

6.  Pre and post judgment interest at the appropriate statutory rate, and

7.  Such other relief as this Court may deem just and appropriate in law or in equity.

**PLAINTIFF DEMANDS A JURY**

Respectfully Submitted,

April 15, 2022                    /S/ Rodney Williams_____
                                 Rodney Williams (P47888)
                                 Attorney for Plaintiff
                                 615 Griswold Street; Suite 700
                                 Detroit, Michigan 48226
                                 (313) 309-7852
                                 (313) 309-7853
                                 attorneyrodneywilliams@gmail.com